## Territo Appeal

*Reynolds, Reynolds & Doran,* for appellants.

*Ivo V. Giannini,* for appellee.

*Rosenn, Jenkins & Greenwald,* for intervenors.

SCHIFFMAN, J., April 7, 1966.—This is an appeal by Joseph Territo and Ruth Territo from the decision of the Board of Adjustment of the Borough of West Wyoming, County of Luzerne, Commonwealth of Pennsylvania, refusing to grant them permission to install certain fuel oil storage tanks on their premises located at 563 West Sperling Street in said borough.

The subject premises are located in an area essentially residential. Certain home type business operations are included within such area. For some period of time, petitioner Joseph Territo has conducted a general hauling and coal and fuel oil distribution from the premises here involved. In pursuance of his business enterprise, Mr. Territo has stored upon and operated from this land four trucks of various sizes used in hauling coal and fuel oil.

Certain adjoining landowners have intervened to oppose the granting of permission to install these fuel oil storage tanks. The West Wyoming Board of Adjustment has adopted and relied upon the testimony and position of the intervenors.

On December 30, 1964, the Borough Council of West Wyoming passed a zoning ordinance regulating the type and manner of use of the various areas of the borough. The area in which the Territo business is conducted was zoned "R-1", which means that this area can be used for single family residential purposes only.

Article 2.06 of said ordinance provides that any nonconforming use of any premises existing at the effective date of the ordinance in question may be continued. Mr. Territo, therefore, is free to conduct his business as he did prior to the enactment of this ordi-

nance or as it may reasonably and logically, in the normal course of events, be increased or expanded: Humphreys v. Stuart Realty Corporation, 364 Pa. 616. Our determination of this matter relates only to the precise proposed installation as here involved. Article 2.06, supra, also provides that no nonconforming building or structure shall be extended or enlarged unless authorized by the board of adjustment.

Article 2.02 of the ordinance further provides that: ". . . no land, building, structure or premises shall hereafter be used, and no building or part thereof or other structure shall be located, erected, reconstructed, extended, enlarged, converted, altered or moved except in conformity with the regulations herein specified for the district in which it is located . . ."

Mr. Territo contends that the installation of two 4,000 gallon storage tanks underground, which shall be covered by three feet of soil and blacktopped, with their only connection to the outside being a pipe and pump for removing the oil from the tanks, is not such an installation as is prohibited by the ordinance.

Appellant maintains that the installation of the storage tanks does not constitute the erection of a structure within the proscription of the ordinance. He relies on Article 11.55 of the ordinance, which defines a structure as "anything constructed, the use of which requires a permanent location on the ground, or attached to something having a permanent location on the ground . . ."

It is, further, the contention of appellant that these oil tanks do not come within this definition because they will not be "on the ground", but rather will be placed in the ground. It is alleged the means of affixing will not require a permanent location on the ground. Appellant further seeks to establish an inference that this was not to be a permanent installation.

The proposed installation includes the burying of

the tanks under three feet of soil and blacktop, the installation of piping and wiring and the placing of a pump. The testimony reveals that appellant had obtained a permit from the State Fire Marshall to *permanently* install these tanks in the ground. We must conclude that the installation involved is intended to be permanent within the meaning of the above quoted Article 11.55.

We also conclude that the nature of the within installation comes within the meaning of the term "permanent", which is defined in Webster's New International Dictionary as a "thing which is continuing or enduring in the same state, status, place or the like without fundamental or marked change; not subject to fluctuation or alteration; fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient".

We must, however, agree with appellant that the tanks do not constitute structures within the meaning of the ordinance: Humphreys v. Stuart Realty Corp., supra. Their installation, therefore, would not constitute a prohibited enlargement of an existing structure or the construction of a new structure under Article 2.06 of the ordinance above, which permits the continuance of a nonconforming use.

The factor which, we conclude, does prohibit the installation of these tanks is that it enlarges and changes the nature of the prior existing use. Previously, the land was used only as a truck depot and dispatching area in the conduct of Mr. Territo's business. It is now proposed that the land be used for the storage and dispensing of fuel oil in addition to its presently existing use for distribution and sale of fuel products.

The case of Humphreys v. Stuart Realty Corp., supra, does not support appellant's right to the relief which he seeks, since the factual situation in that case

reveals that defendant therein had for some period of time used its land for the purpose of storage of petroleum products and solvents, and had merely increased its storage capacity through the installation of additional storage tanks. The installation was permitted because the court concluded that these tanks were not structures erected within the prohibition of the ordinance there in question and that it was not an unreasonable increase or expansion of the nonconforming use.

The policy of the law of this Commonwealth with regard to nonconforming uses is set forth in the case of Hanna v. Board of Adjustment, 408 Pa. 306, wherein it is stated that:

". . . A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent. (Citations.) The continuance of nonconforming uses under zoning ordinances is countenanced because it avoids the imposition of a hardship upon the property owner and because the refusal of the continuance of a nonconforming use would be of doubtful constitutionality. Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be reduced to conformity as speedily as is compatible with the law and the Constitution".

We conclude, as did the board of adjustment, that the proposed use is such a change or increase in the use of the land as to be proscribed. We further conclude, in light of all the foregoing, that the proposed

change in the use of his land by Mr. Territo, appellant herein, is prohibited by the provisions of the zoning ordinance of the Borough of West Wyoming, adopted December 30, 1964. Rather than limiting or containing the existing nonconforming use, the proposed installation would expand the use of the land beyond that to which it was being put at the time of the passage of the ordinance in question.

Accordingly, we enter the following

ORDER

Now, April 7, 1966, the appeal of Joseph Territo and Ruth J. Territo from the decision of the Board of Adjustment of West Wyoming Borough is hereby dismissed.